UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH P. HAND, SR.<br><br>and<br><br>ALFRED C. NOWICKI,<br><br>           Plaintiffs,<br><br>    vs.<br><br>NEW JERSEY STATE ATHLETIC<br>CONTROL BOARD,<br><br>and<br><br>AARON M. DAVIS in his individual and<br>official capacities,<br><br>and<br><br>NICHOLAS B. LEMBO in his individual<br>and official capacities,<br><br>           Defendants. | **COMPLAINT, JURY DEMAND and<br>L. CIV. R. 11.2 CERTIFICATION**<br><br>Civil Action No.: |

## COMPLAINT

Plaintiffs, by and through their undersigned counsel bring the following Complaint against Defendants and aver as follows:

## PARTIES

1.    Plaintiff Joseph P. Hand, Sr. ("Hand") is an individual and citizen of both Pennsylvania and the United States of America. Hand is, and at all times relevant to this Complaint was, a boxing manager licensed by the State of New Jersey. Hand has been involved in the boxing industry for over forty (40) years as a promoter and manager.

2. Plaintiff Alfred C. Nowicki ("Nowicki") is an individual and citizen of both New Jersey and the United States of America. Nowicki is, and at all times relevant to this Complaint was, a boxing manager licensed by the State of New Jersey. Nowicki began managing boxers in 1997 and is currently guiding the career of both "up and coming" as well as nationally known high profile boxers (Hand and Nowicki may collectively hereinafter be referred to as the "Plaintiffs").

3. Defendant Aaron M. Davis ("Davis") is an individual and citizen of both the State of New Jersey and the United States of America. Davis is, and at all times relevant to this Complaint was, Commissioner of the New Jersey State Athletic Control Board.

4. Nicholas B. Lembo ("Lembo") is an individual and citizen of both the State of New Jersey and the United States of America. Lembo is, and at all times relevant to this Complaint was, an attorney licensed by New Jersey, a Deputy Attorney General of New Jersey and Legal Counsel to the New Jersey State Athletic Control Board.

5. The New Jersey State Athletic Control Board (the "NJSACB") is an agency and/or division of the New Jersey Department of Law and Public Safety. The NJSACB's purported purpose is to protect the safety and well-being of all participants and promote the public confidence and trust in the regulatory process and conduct of public boxing and other combative sports.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter because Plaintiffs are asserting a violation of their rights under the United States Constitution and 42 U.S.C. § 1983. 28 U.S.C. § 1331. This Court also has supplemental subject matter jurisdiction over the state law claims. 28 U.S.C. § 1367.

2

7. Venue is appropriate in this judicial district as a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district; and, Defendants reside in and/or maintain their principal place of business in this judicial district and have sufficient contacts in this judicial district to be subject to personal jurisdiction herein. 28 U.S.C. § 1391(b).

## FACTS COMMON TO ALL COUNTS

### *The Pennsylvania Boxer-Manager Contract*

8. On October 29, 2007, Hand and Buddy Osborn ("Osborn"), a Pennsylvania based boxing manager who is not a party to this action, entered into a three-year contract with boxer Dennis Hasson ("Hasson") in Pennsylvania whereby Hand and Osborn agreed to co-manage Hasson's boxing career (the "PA Contract"). A copy of the PA Contract is attached as EXHIBIT A and incorporated herein.

9. The PA Contract was signed by Hand, Osborn and Hasson, and endorsed by the Pennsylvania State Athletic Commission on November 2, 2007.

10. Hand, Osborn and Hasson proceeded to faithfully perform their respective duties under the PA contract until in or around August of 2009 at which time Osborn informed Hand that due to other important obligations he could no longer co-manage Hasson's boxing career.

11. Shortly thereafter, Hand contacted Nowicki of Cherry Hill, NJ to inquire as to whether he would be interested in entering into a new agreement to co-manage Hasson. Nowicki informed Hand that he was indeed interested. Accordingly, Hand and Nowicki approached Hasson and discussed the possibility of entering into a new agreement whereby Hand and Nowicki would serve as co-managers of Hasson's boxing career. Hasson was agreeable and the parties began discussing terms.

12.    Hand, Nowicki and Hasson agreed to new terms and agreed to release and relieve Osborn of his obligations under the PA Contract, as was his wish.  Under the terms agreed to by the three parties, among other new and/or different terms, Hasson would receive a higher percentage of revenue than the PA Contract.

### *The New Jersey Boxer-Manager Contract*

13.    On September 29, 2009, Hand, Nowicki and Hasson appeared personally before Defendants Lembo and Davis at the NJSACB offices to memorialize the new agreement.  At this meeting, Hand, Nowicki and Hasson discussed the previous agreement memorialized in the PA Contract with Lembo and Davis.  Then, with intent to extinguish the previous agreement, all three parties signed the form boxer-manager contract recommended by the NJSACB which was immediately endorsed by Lembo (the "NJ Contract"). A copy of the NJ Contract is attached as EXHIBIT B and incorporated herein.

14.    Thereafter, Hand and Nowicki expended substantial time, money and resources in performance of the NJ Contract.  Subsequent and pursuant to the NJ Contract, Hand and Nowicki secured Hasson the opportunity to participate in three (3) boxing matches.  Hasson participated in those matches on November 20, 2009, July 20, 2010 and September 25, 2010, and won each of them.  Sums of money derived from those matches were distributed pursuant to the NJ Contract.

15.    Unbeknownst to Plaintiffs at the time, upon information and belief, previous to August 24, 2011, Lembo began engaging in improper ex parte e-mails with Hasson regarding the NJ Contract.

16.    On Wednesday, August 24, 2011, without providing Plaintiffs notice or an opportunity to be heard, with full knowledge that his actions would deprive Plaintiffs of their

4

valuable rights under the NJ Contract, Lembo sent an e-mail to Hasson which read, in full, "The NJ management contract filed at our agency offices in 2009 is void because no party to that contract disclosed that there was a pre-existing management contract in effect in PA at the time." A copy of the Lembo E-mail is attached as EXHIBIT C and incorporated herein.

17.    Upon information and belief, the Lembo E-mail was sent with the express approval, authorization, and endorsement of Davis and the NJSACB.  Davis and Ms. Theresa Garzio, Secretarial Assistant to the NJSACB, were copied recipients of the Lembo E-mail.

18.    To the date of this Complaint, no representative of the NJSACB, including Lembo and Davis, ever officially informed Hand or Nowicki that they considered the NJ Contract void. Hand and Nowicki finally became aware of the facts stated in Paragraphs 17 and 18 several months later through third parties as described hereafter.

19.    In or around early December of 2011, Hand and Nowicki heard from individuals in the boxing industry that Hasson believed he was no longer bound by the NJ Contract.  Further, Hand and Nowicki became aware that Hasson was working with promoters and other managers without their requisite consent.  Unaware that Lembo, Davis and the NJSACB unilaterally voided the NJ Contract months earlier, Hand and Nowicki sent a joint letter to the NJSACB to request a meeting or other opportunity to discuss the NJ Contract with Lembo and Davis.  A copy of the joint letter is attached as EXHIBIT D and incorporated herein.  Lembo, Davis and the NJSACB received the letter, but intentionally refused to provide any information or respond in any way to Hand or Nowicki.

20.    On December 16, 2011, Hand received several communications from attorneys for Hasson which threatened to sue Hand and further claimed that Hasson was no longer bound by the NJ Contract.  These communications left Hand and Nowicki upset and confused as

Lembo, Davis, and the NJSACB continued to stonewall any attempts by Plaintiffs to discuss the status of the NJ Contract.

21. On December 23, 2011, after still no response to the joint letter of December 9, Nowicki decided to call the NJSACB office to speak with Davis or Lembo; he left a message with the Secretarial Assistant, Ms. Garzio. After Nowicki received no response to his message, he followed up again on December 27, 2011, December 28, 2011, January 3, 2012, and twice on January 4, 2012, each time leaving a message. Upon information and belief, Lembo and Nowicki received these messages, but continued refusing to discuss, clarify or justify their actions.

22. On January 5, 2012, Nowicki called the NJSACB office again and, presumably in the absence of Secretary Garzio, Davis picked up the call without knowing it was Nowicki. Being that Davis picked up the call, he could no longer ignore Plaintiffs. At this time, Davis summoned Lembo and the two finally spoke to Nowicki. During this conversation, Lembo simply told Nowicki that if there was any dispute it was between Hand and Nowicki, and Hasson; Lembo stated he would not be getting involved on either side.

23. Also on January 5, 2012, Hasson filed through counsel a Certified Complaint and Order to Show Cause against Hand and Nowicki in the Superior Court of New Jersey. Hasson sought a declaration that the NJ Contract was void pursuant to Lembo's August 24, 2011 e-mail. Despite his assertion that he would not be involved in any litigation, Lembo ambushed the Plaintiffs by filing a certification in support of Hasson's civil prosecution of Hand and Nowicki. Lembo's certification included a new justification, also without basis in law or otherwise, for Lembo, Davis and the NJSACB holding the NJ Contract void.

6

24. On April 2, 2012, Plaintiffs, through undersigned counsel, sent a notice of claim letter to Jeffrey S. Chiesa, Attorney General of New Jersey, pursuant to the New Jersey Tort Claims Act.

## COUNT 1 - AGAINST ALL DEFENDANTS

### [42 U.S.C. § 1983: VIOLATION OF PLAINTIFFS' SUBSTANTIVE AND PROCEDURAL DUE PROCESS RIGHTS]

25. Plaintiffs reallege and incorporate by reference paragraphs 1 through 24, above.

26. Plaintiffs acquired a liberty and property interest upon entering into the binding NJ Contract. Plaintiffs further invested a significant amount of money in performance of the contract, strengthening their claim to the aforementioned interest.

27. Having acquired liberty and property interests in the NJ Contract, Plaintiffs, as citizens of the United States, are entitled to enjoy the benefits of the NJ Contract free from arbitrary and capricious intrusions or interference by the individuals associated with the NJSACB, including the Defendants.

28. In committing the actions set out in this Complaint, Lembo and Davis were using authority granted to them by the State of New Jersey and the NJSACB; accordingly, such actions must be deemed State action and under color of State law. Further, as sole Legal Counsel and Commissioner respectively, Lembo and/or Davis are final policy makers.

29. On August 24, 2011, Defendants arbitrarily held the NJ Contract void without basis or justification. To the Plaintiffs' severe detriment, Defendants intentionally withheld this determination from Plaintiffs and deliberately ignored several good faith inquiries from Plaintiffs regarding the status of the NJ Contract.

30. Defendants arbitrarily and capriciously stripped Plaintiffs of their valuable liberty and property interest in the NJ Contract with no prior notice that the NJ Contract was under

consideration for any reason. Further, no opportunity for a hearing, formal or informal, was provided prior to the Defendants unilateral and summary decision to hold the NJ Contract void which is in violation of the United States Constitution as applied through 42 U.S.C. § 1983.

31. Defendants Lembo and Davis knew or should have known that their actions in the conduct of intentionally denying Plaintiffs of their valuable rights under the NJ Contract denied Plaintiffs their constitutional right to substantive due process of law. Further, Lembo and Davis knew or should have known that declining and refusing to provide any notice or opportunity to be heard prior to holding the NJ Contract void denied Plaintiffs their constitutional right to procedural due process of law. Therefore, their egregious actions exceeded the authority in their official capacities, and thus, they are personally liable for any damages incurred by Plaintiffs.

32. As a proximate result of Defendants' unlawful actions, Plaintiffs have each suffered significant loss to their past, present and future earnings as they were stripped of the value of the NJ Contract. Further, Defendants' actions have directly negatively impacted Plaintiffs' ability to negotiate contracts with boxers and prejudiced their ability to engage other managers, promoters.

33. Defendants' acts have also caused Plaintiffs each to suffer emotional distress, humiliation and anxiety.

34. Plaintiffs have each been further damaged by being exposed to contempt, ridicule, loss of their good name and reputation, and have suffered and continue to suffer substantial economic loss, and disruption of their boxing management business affairs.

35. As a proximate result of Defendants' actions, Plaintiffs suffered and continue to suffer damages in an amount to be proven at trial.

36. As discussed in factual detail above, the actions of Lembo and Davis in their individual capacities were taken in bad faith, maliciously, and in reckless disregard of the rights of Plaintiffs, and punitive damages should be awarded against Lembo and Davis in an amount to be determined by the jury to punish them and deter them and others from acting in a similar manner.

## COUNT 2 – PLAINTIFFS AGAINST LEMBO AND DAVIS

### [TORTIOUS INTERFERENCE WITH CONTRACT]

37. Plaintiffs reallege and incorporate by reference paragraphs 25 through 36, above.

38. Plaintiffs had established a binding contractual relationship with Hasson. Lembo and Davis had actual knowledge of this contractual relationship by virtue of their official positions with the NJSACB. Further, Lembo and Davis were present when the contract was signed and Lembo personally endorsed the contract.

39. Lembo and Davis were aware they had no basis in law to hold the NJ Contract void or otherwise interfere with the NJ Contract. Notwithstanding, as described in detail above, Lembo and Davis did intentionally interfere with Plaintiffs' binding contract with the intent to strip Plaintiffs of their valuable rights.

40. As a proximate result of Lembo and Davis' actions, Plaintiffs suffered and continue to suffer damages in an amount to be proven at trial.

41. Lembo and Davis' actions in holding the NJ Contract void without basis were intentional, willful, and specifically designed to strip Plaintiffs of their valuable contractual rights. The conduct of Lembo and Davis was perpetrated with actual malice and ill will toward Plaintiffs, and with the intentional and improper purpose of causing damage. There was no

9

justifiable cause for Defendants' actions. As a result, an award of punitive damages is warranted.

## COUNT 3 – PLAINTIFFS AGAINST LEMBO AND DAVIS

### [TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE]

42.     Plaintiffs reallege and incorporate by reference paragraphs 37 through 41, above.

43.     Plaintiffs had established numerous relationships with other managers, boxers, promoters, trainers, and other individuals in the boxing industry. Lembo and Davis had actual knowledge of these relationships by virtue of their official positions with the NJSACB.

44.     The conduct of Lembo and Davis, as described above, was designed to disrupt the business relationships Plaintiffs had developed over several years in the boxing industry. Plaintiffs' relationships have been disrupted as a result of Lembo and Davis' actions. Further, Lembo and Davis' actions have impacted Plaintiffs' ability to negotiate contracts with boxers and prejudiced Plaintiffs' ability to engage other managers and promoters.

45.     As a proximate result of Lembo and Davis' actions, Plaintiffs suffered and continue to suffer damages in an amount to be proven at trial.

46.     Lembo and Davis' actions in interfering with Plaintiffs' prospective economic advantage was intentional, willful, and specifically designed to strip Plaintiffs of their valuable business prospects. The conduct of Lembo and Davis was perpetrated with actual malice and ill will toward Plaintiffs, and with the intentional and improper purpose of causing damage. There was no justifiable cause for Lembo and Davis' actions. As a result, an award of punitive damages is warranted.

## COUNT 4 – PLAINTIFFS AGAINST LEMBO AND DAVIS

### [CIVIL CONSPIRACY]

10

47.     Plaintiffs reallege and incorporate by reference paragraphs 42 through 46, above.

48.     Lembo and Davis acted in concert with each other in furtherance of their efforts to deprive Plaintiffs of their rights under the United States Constitution and to interfere with Plaintiffs' present and prospective relationships and ability to conduct their business.

49.     Lembo and Davis have acted intentionally and deliberately to achieve the unlawful goal of depriving Plaintiffs of their rights under the United States Constitution and the NJ Contract.

50.     Plaintiffs have sustained actual damages as a result of Lembo and Davis' conspiracy.

51.     Lembo and Davis acted with reckless indifference and with malice in furtherance of the conspiracy with the express purpose of depriving Plaintiffs of their valuable rights under the NJ Contract and other contractual and prospective advantages.

52.     Lembo and Davis are jointly and severally liable for their actions in furtherance of this conspiracy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request this Court:

1.     Enter judgment in favor of the Plaintiffs against Defendants;

2.     Enter an order declaring Defendants' conduct unconstitutional:

3.     Award Plaintiffs compensatory damages against all Defendants and punitive damages against Defendants Lembo and Davis;

4.     Award Plaintiffs' counsel reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law;

11

5.      Grant to Plaintiff such other relief as may be just and proper under the circumstances, including but not limited to injunctive relief.

Respectfully submitted,


Dated: 11/30/2012                                      By: /s/ Ryan R. Janis
                                                           Ryan R. Janis, Esq.
                                                           JEKIELEK & JANIS, LLP
                                                           203 East Pennsylvania Boulevard
                                                           Feasterville, PA 19053
                                                           Telephone: (215) 396-2727
                                                           Fax: (267) 386-2167
                                                           E-mail: ryan@jj-lawyers.com

12

## JURY DEMAND

Plaintiffs demand a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil

Procedure for all issues so triable.


Dated: 11/30/2012                    By: /s/ Ryan R. Janis
                                         Ryan R. Janis, Esq.
                                         JEKIELEK & JANIS, LLP
                                         203 East Pennsylvania Boulevard
                                         Feasterville, PA 19053
                                         Telephone:  (215) 396-2727
                                         Fax:  (267) 386-2167
                                         E-mail: ryan@jj-lawyers.com


## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

Pursuant to Local Civil Rule 11.2, I hereby certify that to the best of my knowledge, the

matter in controversy is not the subject of any other action pending in any court, or of any

pending arbitration or administrative proceeding.


Dated: 11/30/2012                    By: /s/ Ryan R. Janis
                                         Ryan R. Janis, Esq.
                                         JEKIELEK & JANIS, LLP
                                         203 East Pennsylvania Boulevard
                                         Feasterville, PA 19053
                                         Telephone:  (215) 396-2727
                                         Fax:  (267) 386-2167
                                         E-mail: ryan@jj-lawyers.com

# EXHIBIT A

'CEXO'

JUL 28 2008

## BOXER MANAGER CONTRACT
## COMMONWEALTH OF PENNSYLVANIA
## STATE ATHLETIC COMMISSION

MEMORANDUM OF AGREEMENT made this ____ day of OCTOBER 2007 between DENNIS HASSON JR.

of 1809 E. TUSCULUM ST. PHILA, PA 19134 (Boxer)

(Ring Name)        (Address)              (State)              (Zip Code)

date of birth 2/24/84 Age 23 hereinafter referred to as Boxer, and BUDDY OSBORN, JOE HAND (Manager) (Co-Manager)

of 407 E. PENNSYLVANIA BLD FEASTERVILLE PA 19053 hereinafter referred to as a Manager.

(Address)              (State)              (Zip Code)

In consideration of the covenants and conditions hereinafter contained, the parties, intending to be legally bound hereby, agree as follows:

FIRST: This agreement shall be binding on all parties for a period of 3 years (not to exceed 3 years) from date listed above. The Boxer agrees to render his services solely and exclusively for the Manager in all contests or exhibitions and in all areas as designated by the Manager.

SECOND: The Manager agrees to pay the Boxer 60 % (Must be at least 60%) of all sums of money derived by him from any services that the said Boxer may render hereunder. The Manager shall be responsible for all necessary training expenses incurred by the Boxer in the performance of his duties, which shall include but not limited to license and insurance fees, payment of all trainers/cutman and necessary travel expenses. Manager further agrees and guarantees said Boxer that the said percentage of the moneys to be paid to him as stated above shall in no year during the term of this contract be less than $ 1,000 – Dollars. (Not less than $1,000.00).

THIRD: THE BOXER DOES CERTIFY AND WARRANT THAT THERE ARE NO OTHER AGREEMENTS BETWEEN HIMSELF AND ANY OTHER MANAGER REGARDING HIS SERVICES AS A BOXER.

FOURTH: The Boxer agrees to faithfully fulfill any contract entered into by him and his Manager during the term hereof. It is understood and agreed by and between the parties, hereto that the services of the Boxer are extraordinary, exceptional and unique.

FIFTH: The Boxer agrees that he will not, during this contract, take part in any contests or other exhibitions, or otherwise exercise his talent in any manner or place except as directed by the Manager, and will not allow his name to be used in any boxing event whatsoever without first obtaining the written permission of his Manager so to do.

SIXTH: The Boxer shall attend to such training exercises as the Manager shall require, and shall proceed and travel by such means of conveyance as and when required by the Manager for the purpose of fulfilling this agreement.

SEVENTH: This agreement is subject to the provisions of the Pennsylvania Athletic Code and to the Rules and Regulations of the Pennsylvania Athletic Commission, hereinafter referred to as the Commission) and to any future amendments of either of them.

EIGHTH: Both parties certify that they are currently licensed by the Commission. This agreement shall be automatically terminated if the license of the Boxer or Manager is revoked by the Commission, or, if the Manager fails to renew his license within thirty (30) days after the expiration thereof. If the license of the Boxer or Manager is suspended, this agreement shall not be binding upon the other party during the period of such suspension. (If Co-Managers, this section will apply only to that Manager whose license has been terminated, revoked or suspended. The contract shall continue in force with respect to the remaining parties).

NINTH: The Manager agrees to use his best efforts to secure remunerative contests and exhibitions for the Boxer.

TENTH: All parties agree to waive any and all claims against the Department of State, Commission, and Commonwealth of Pennsylvania arising from any defects in the ring or ring equipment under the provisions set forth in the Athletic Code or regulations. Any approval of the ring or ring equipment by any Commission representative does not amount to a warranty or guarantee of its safety or fitness for use in any boxing matter, contest or exhibition.

ELEVENTH: ALL PARTIES AGREE TO WAIVE AND HOLD HARMLESS ANY AND ALL CLAIMS AGAINST THE COMMISSION, THE DEPARTMENT OF STATE AND THE COMMONWEALTH OF PENNSYLVANIA ARISING FROM ANY CONFLICTS UNDER THIS CONTRACT.

TWELFTH: In the event of an unresolved dispute between the fore stated Boxer-Manager, the Commission may intercede in said dispute and all decisions rendered by the Commission shall be binding on both parties.

THIRTEENTH: Boxer and Manager shall not sell, assign, transfer, or in any way encumber, attempt to sell, assign or transfer any interest, in whole or in part, which he shall hold under this contract for the services of the this contract, without notice to and written consent of either party and the Commission.

FIFTEENTH: THIS CONTRACT IS NOT VALID AND BINDING UNTIL BOTH PARTIES HAVE APPEARED BEFORE THE COMMISSION AND HAVE RECEIVED ITS APPROVAL ENDORSED HEREON.

THE UNDERSIGNED HAVE READ AND UNDERSTAND THIS AGREEMENT:

WITNESS Our hands and seals on the day and year first above written.

MANAGER BUDDY OSBORN (SEAL)    CO-MANAGER (If Applicable) JOE HAND (SEAL)

STATE OF Pennsylvania    BOXER DENNIS HASSON (SEAL)

COUNTY OF Bucks SS:

On this 5th day of November 2007 before me (a notary public, the undersigned officer), personally appeared DENNIS HASSON JR. and BUDDY OSBORN, JOE HAND known to me (or satisfactorily proven) to be the

Boxer              Manager              Co-Manager (IF APPLICABLE)

individuals whose names are subscribed to the foregoing instrument, who acknowledged to me that they did execute the same for the purposes therein contained.

Notary Public

Approved by _____
Commission Representative

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MARGARET H. CICALESE, Notary Public
Lower Southampton Twp., Bucks County
My Commission Expires March 3, 2009

# EXHIBIT B

# Boxer-Manager Memorandum of Agreement
(Recommended by the New Jersey State Athletic Control Board)

09/29/2009
FILED IN OFFICE

THIS MEMORANDUM OF AGREEMENT made and entered into this __29TH__ day of __SEPTEMBER__ A.D. __2009__ between __ALFRED C. NOWICKI__ __JOSEPH HAND__, the City of __CHERRYHILL NJ / HOLLAND PA__, hereinafter referred to as Manager, party of the first part, and __DENNIS HASSON__, ring name _____, residing at __2712 RUTH ST.__, of the City of __PHILADELPHIA__, State of __PENNSYLVANIA__, with Postal Zip Code of __19154__, hereinafter referred to as Athlete, party of the second part.

## WITNESSETH:

In consideration of the covenants and conditions hereinafter contained, the parties hereto agree as follows:

**FIRST:** The Manager engages the Athlete and the Athlete agrees for a period of __FIVE__ year(s) from the date hereof, to render services solely and exclusively for the Manager in such boxing contests, exhibitions of boxing, training exercises, whenever required by the Manager in the State of New Jersey and elsewhere where the Manager may from time to time direct.

**SECOND:** The Manager agrees to pay the Athlete __Seventy Five__ per cent of all sums of money derived by the Athlete from any services that said Athlete may render hereunder, after the deductions of all training expenses and travel fares that may be incurred by the Athlete in the performance of duties hereunder, and further agrees and guarantees said Athlete that the said per cent of the moneys to be paid the Athlete, him as above provided, shall in no year during the term of this contract be less than $500.00.

**THIRD:** The Manager agrees to exercise best efforts to secure remunerative boxing contests and exhibitions for the Athlete.

**FOURTH:** The Athlete agrees faithfully to fulfill any contract entered into on said Athlete's behalf by the Manager during the term hereof.

**FIFTH:** The Athlete agrees to during the continuance of this contract not to take part in any boxing contests or other exhibitions, perform or otherwise exercise boxing talent in any manner or place except as directed by the Manager, and shall not allow said Athlete's his name to be used in any commercial enterprise whatsoever without first obtaining the permission of the Manager to do so.

**SIXTH:** The Athlete shall attend to all training exercises as the Manager shall require, and shall proceed and travel by all means of conveyance as and when required by the Manager for the purpose of this agreement.

**SEVENTH:** It is understood and agreed by and between the parties hereto that the services of the Athlete are extraordinary, exceptional and unique.

IN WITNESS WHEREOF, the said parties have hereunto set their hand the day and year first above written.

Party of the First Part

Co. Manager S

Party of the Second Part

Athlete

CITY AND STATE __Trenton NJ__

COUNTY __Mercer__ }ss.

On this __20th__ day of __September__, A.D. __2009__, before me personally came __Al Nowicki / Joe Hand.__ and __Dennis Hosson__ to me known and known to me to be the individuals described in and who executed the foregoing instrument, and they each duly acknowledged to me that they executed same.

Notary Public

My Commission expires __Nicholas Lembo Deputy Attorney General Counsel, Athletic Control Board.__

The provisions of this contract will not be recognized by the New Jersey State Athletic Control Board, except if and when all parties are duly licensed in New Jersey. The Manager herein named must renew his Manager License within thirty days after expiration date, during the term of this contract. Failure to do so will result in voiding this contract.

# EXHIBIT C

--- On Wed, 8/24/11, Nick Lembo <*Nick.Lembo@lps.state.nj.us*> wrot
From: Nick Lembo <Nick.Lembo@lps.state.nj.us>
Subject: Re: Please read Dennis Hasson boxing contract.
To: dhas160@yahoo.com
Cc: "Aaron Davis" <Aaron.Davis@lps.state.nj.us>, "Theresa Garzio" <Theresa.Garzio@lps.state.nj.us>
Date: Wednesday, August 24, 2011, 10:01 PM

The NJ management contract filed at our agency offices in 2009 is void because no party to that contract disclosed that there was a pre-existing management contract in effect in PA at the time.
-----Original Message-----
From: Dennis Hasson <dhas160@yahoo.com>
To: Nick Lembo <Nick.Lembo@lps.state.nj.us>

Sent: 8/24/2011 5:55:12 PM
Subject: Please read Dennis Hasson boxing contract.

Mr. Lembo:

I would like confirmation from you that you talked with Greg Sirb with the PA Commission and he informed you that my boxing contract expired October 29, 2010. And that you in turn will not honor the NJ contract in my name signed 9/29/09 with Joe Hand, Sr., and Alfred (Doc) Nowicki since the PA contract was still in effect.


Dennis Hasson



PS  Sirb put up a contract 9/21/09 on his website showing I signed a second contract in PA which I did not. When i asked him for a copy he said "I do not have one" which means there is none. He won't explain to me why it was put up. Thank you for being much more clearer than the PA commission.
CONFIDENTIALITY NOTICE

The information contained in this communication from the
Office of the New Jersey Attorney General is privileged
and confidential and is intended for the sole use of the
persons or entities who are the addressees. If you are not
an intended recipient of this e-mail, the dissemination,
distribution, copying or use of the information it contains
is strictly prohibited. If you have received this communication
in error, please immediately contact the Office of the Attorney
General at (609) 292-4925 to arrange for the return of this information.
CONFIDENTIALITY NOTICE The Information contained in this communication from the Office of the
New Jersey Attorney General is privileged and confidential and is intended for the sole use of the
persons or entities who are the addressees. If you are not an intended recipient of this e-mail, the
dissemination, distribution, copying or use of the information it contains is strictly prohibited. If
you have received this communication in error, please immediately contact the Office of the
Attorney General at (609) 292-4925 to arrange for the return of this information.

# EXHIBIT D

December 9, 2011


State of New Jersey
Office of Attorney General
Department of Law and Public Safety
State Athletic Control Board
P.O. Box 180
Trenton, NJ  08625-0180
Attn: Commissioner Aaron M. Davis

Dear Commissioner Davis,

This letter is in reference to a management contract between boxer Dennis Hasson and Manager, Al (Doc) Nowicki and Manager, Joe Hand Sr.. We would like to discuss the agreement signed and filed in your office on 9/29/2009 in person with you and counsel for the commission Mr. Nicolas Lembo who was present for the signing. As we stated on 9/29/2009 Mr. Joe Hand Sr. had a management contract with Dennis Hasson in Pennsylvania, Mr. Hand asked Mr. Nowicki to be a full 50% partner in managing Mr. Hasson. We explained to you on that day the reason for us coming to New Jersey, first I live in Cherry Hill and have other fighters licensed in New Jersey, second we were able to sign him to a 5 year contract, which gave him 75% of the purse. Since 9/29/2009 we had him fight in three fights under the new contract, we also paid for a hand operation (torn tendon) which was paid out of our own pockets, Mr. Hasson had no complaints at that time. How was our contract NOT valid at that time? At the signing of our contract we disclosed to both Mr. Davis and Mr. Lembo the reason for the signing of the new contract which was to retain a 5 year deal. The first 2 to 3 years in a contract is to develop a fighter and we certainly did that by getting him fights at 75% and also helping him financially when needed. If Mr. Hasson does not like the great opportunity we gave him, we would be more than willing to sell him his contract back at a reasonable price however at this time we feel as though our contract is valid. We would like to sit down with you and counsel Mr. Lembo at your earliest convenience to resolve the matter at hand.

Sincerely,

Mr. Al Nowicki

Mr. Joe Hand Sr.