UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOSEPH P. HAND. SR., et al.,

      Plaintiffs,

  v.

NEW JERSEY STATE ATHLETIC
CONTROL BOARD, et al.,

      Defendants.

Civil Action No. 12-7363 (TJB)

MEMORANDUM OPINION

**BONGIOVANNI, Magistrate Judge**

      This matter comes before the Court upon two motions *in limine*. The first motion was filed by Defendant Nicholas B. Lembo ("Lembo") and seeks to bar Plaintiffs from offering lay opinion testimony on the issue of lost managerial fee damages. (Docket Entry No. 53). The second was filed by Plaintiffs Joseph P. Hand, Sr. ("Hand") and Alfred Nowicki ("Nowicki") (collectively, "Plaintiffs" or "Hand and Nowicki") and seeks to (1) exclude all evidence of the New Jersey State Court Chancery proceedings involving Plaintiffs; (2) prohibit any reference to Plaintiffs' failure to appeal the New Jersey State Athletic Control Board's ("NJSACB") decision invalidating the New Jersey contract; and (3) exclude all evidence of non-party, Dennis Hasson's ("Hasson") boxing career after Lembo found the New Jersey contract void. (Docket Entry No. 54). The Court has reviewed and considered all arguments raised by Lembo and Plaintiffs in support of and in opposition to the pending motions *in limine*, including the arguments made during the hearing held on August 12, 2016 concerning these motions. For the reasons set forth more fully below, Lembo's motion *in limine* is DENIED and Plaintiffs' motion *in limine* is GRANTED in part and DENIED in part.

I. **Background**

This matter arises out of the Complaint filed by Hand and Nowicki against the NJSACB, and two of its employees, Lembo, who is a Deputy Attorney General and legal counsel to the NJSACB, and Aaron Davis ("Davis"), who was the Commissioner of the NJSACB on November 30, 2012. Plaintiffs argue that the NJSACB, Lembo and Davis violated their substantive and procedural due process rights when they voided a boxing manager contract between Hand and Nowicki, the managers, on one side and Hasson, the boxer, on the other. (*See generally* Pl. Cmplt.; Docket Entry No. 1). In addition to this due process claim, Hand and Nowikci also assert that Lembo and Davis are liable for tortious interference with contract, tortious interference with prospective economic advantage and civil conspiracy. (*Id.*).

While the Court and the parties' are quite familiar with this case, some background is necessary. As succinctly outlined by the District Court in ruling on the parties' motions for summary judgment:

> On October 29, 2007, Hand and Buddy Osborn, a Pennsylvania based boxing manager, signed a three-year contract in Pennsylvania with Hasson. The Pennsylvania contract was signed by the above three parties and endorsed by the Pennsylvania State Athletic Commission on November 3, 2007. At some point, plaintiffs alleged that due to other obligations, Osborn could not longer co-manage Hasson's career and Osborn terminated the contract. Thereafter, Hand approached Nowicki who agreed to co-manage Hasson, and then Hasson, Hand and Nowicki signed a contract in the State of New Jersey where Nowicki resides.
> On September 29, 2009, Hand, Nowicki and Hasson appeared before D.A.G. Lembo at the New Jersey State Athletic Control Board offices, and the parties signed a five-year contract, which is called a Boxer-Manager contract. Hasson then participated in three boxing matches in New Jersey and he won each of those bouts.
> On June 30, 2010, Hand's managerial license expired. On or about August 12, 2011, Lembo was made aware of the existence of a Pennsylvania contract. It appears that Lembo was contacted by Ken Hisner, who may have been representing Hasson at that

> time. On August 18, 2011, Lembo contacted the Pennsylvania Atlantic State Commissions Executive Director Gregory Sirb, who confirmed the existence of a PA contract.
>
> On or about August 24, 2011, Hasson was advised by e-mail from Lembo that no party had disclosed the PA contract to the New Jersey State Athletic Control Board, and therefore, under New Jersey regulations, the New Jersey Board considered the New Jersey contract void. The reason it was void is because New Jersey contracts cannot exceed five years, pursuant to NJAC 1[3]:46-5.6. The regulation states that: "Boxer-Manager contracts in New Jersey shall be effective for a maximum of five years, unless the manager releases the boxer, or the Commissioner declares the contract void."
>
> Although it's not established in the record, it appears that Mr. Lembo combined the Pennsylvania contract and the New Jersey contract together, and determined that between the two they exceeded the five-year limit in the New Jersey regulation. Several months went by, and then on [December] 9, 2011, Nowicki and Hand sent a letter to the New Jersey State Athletic Control Board, requesting a meeting about the validity of their contract with Hasson. Evidently, Nowicki and Hand never received a copy of the August 24, 2011 e-mail from Lembo to Hasson. Lembo alleges that he forwarded the e-mail to Hasson, but sent it to either Nowicki or Hand by regular mail; but there is no proof of same.
>
> On December 14, 2011, the New Jersey State Athletic Control Board received a letter from Gail Ahrens, esquire, who was representing Hasson, and requested a letter stating that the New Jersey contract was void. On December 16, 2011, Ahrens sent a letter to Hand stating her position that Hasson was not bound by the New Jersey contract. A copy of Ms. Ahrens' letter was sent to Hasson, the New Jersey State Athletic Control Board, the Pennsylvania State Athletic Control Board and others.
>
> On January 3, 2011, in a lawsuit and order to show cause brought in the Superior Court by [Hasson against Hand and Nowicki], Lembo certified that the New Jersey State Athletic Control Board declared the contract among Hasson, Hand and Nowicki to be void because it exceeded five years. In that lawsuit, [Hasson sued Hand and Nowicki], but the State was not a party, except that Hasson requested Lembo to submit a certification to which he complied. On January 5, 2012, the lawsuit was settled between Hasson[,] Hand and Nowicki, and the matter was dismissed with prejudice. On February 7, 2012, Hand renewed his managerial license.

(Tr. of Proceedings held on 2/27/2015, at 2:14 – 5:4; Docket Entry No. 51).

3

On November 30, 2012, Hand and Nowicki filed the instant litigation against the NJSACB, Lembo and Davis. As already noted, in addition to other claims, Hand and Nowicki assert that they were denied due process of law because the NJSACB, Davis and Lembo failed to provide them with procedural due process safeguards when they failed to notify Plaintiffs of their decision to void the agreement between Plaintiffs and Hasson. Indeed, Hand and Nowicki assert that there was no communication between the NJSACB and Plaintiffs at the time Lembo originally informed Hasson that the contract was void on August 24, 2011. (Pl. Cmplt. ¶ 16). In fact, Hand and Nowicki maintain that up until the date they filed the instant matter against the NJSACB, Lembo and Davis, "no representative of the NJSACB, including Lembo and Davis, ever officially informed Hand or Nowicki that they considered the NJ Contract void." (*Id*. ¶ 18).

## II. Analysis

Pending before the Court are Lembo and Plaintiffs' motions *in limine*. Motions *in limine* may be used to shield the jury from unfairly prejudicial or irrelevant evidence. *Ebenhoech v. Koppers Indus., Inc.*, 239 F.Supp. 2d 455, (D.N.J. 2002). The Court addresses the parties' motions *in limine* in turn below.

### A. Lembo's Motion *In Limine* to Bar Plaintiffs from Testifying to Their Opinions as to the "Lost Managerial Fees" Pursuant to Federal Rule of Evidence 701

Lembo seeks to preclude Hand and Nowicki from testifying at trial as to the managerial fees they lost. It appears that Plaintiffs are defining "lost managerial fees" as the percentage of Hasson's winnings they would have been entitled to under the terms of the New Jersey contract. Lembo argues that any such testimony should be precluded because Plaintiffs fail to satisfy subsections (a) and (c) of Federal Rule of Evidence ("FRE") 701.

According to FRE 701:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

The Court finds that Plaintiffs' proposed testimony regarding their lost managerial fees is appropriate under FRE 701. As a result, the Court denies Lembo's motion *in limine* seeking to preclude the introduction of this testimony.

In reaching this conclusion, the Court finds that Plaintiffs' proposed testimony regarding their lost managerial fees is rationally based on their perception (FRE 701(a)) and not based on scientific, technical, or other specialized knowledge (FRE 701(c)). With respect to subsection (a), the Court is aware that under FRE 602, a lay witness may only testify to a matter if evidence, including the witness's own testimony, is introduced sufficient to support a finding that the witness has personal knowledge of the matter. While neither Hand nor Nowicki have personal knowledge of Hasson's winnings after they stopped managing him, they do have personal knowledge of what Hasson made under their management as well as what other similarly situated boxers made under their management. The Court finds that this is sufficient for purposes of both FRE 602 and 701(a).

With respect to FRE 701(c), the Court disagrees with Lembo that "[i]t can hardly be maintained that esoteric knowledge such as '[l]ost managerial fees' relating to boxing contracts does not constitute 'specialized knowledge' within the scope of Rule 702." (Lembo Br. at 6-7; Docke Entry No. 53-4). As the Advisory Committee Notes to the 2000 amendments to FRE 701 make clear:

> [M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the

> necessity of qualifying the witness as an accountant, appraiser, or similar expert. *See, e.g., Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993) (no abuse of discretion in permitting the plaintiff's owner to give lay opinion testimony as to damages, as it was based on his knowledge and participation in the day-to-day affairs of the business). Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business. The amendment does not purport to change this analysis.

The Court finds Hand and Nowicki's proposed testimony regarding lost managerial fees to be akin to a business owner testifying about lost profits. Indeed, that is almost precisely what their lost managerial fees are. Such testimony does not require scientific, technical or other specialized knowledge in the realm of an expert. Instead, it represents exactly the kind of particularized knowledge attained by virtue of Hand and Nowicki's position in their business as boxing managers. As such, for the reasons outlined by the Advisory Committee quoted above, the Court finds it to be an appropriate subject for lay opinion testimony under FRE 701. Lembo's motion *in limine* to bar such testimony is therefore denied. The scope of the testimony shall be addressed during the Trial Conference.

   **B. Plaintiffs' Motion *In Limine* to (1) Exclude All Evidence of the New Jersey State Court Chancery Proceedings Involving Plaintiffs; (2) Prohibit Any Reference to Plaintiffs' Failure to Appeal the NJSACB's Decision Invalidating the New Jersey Contract; and (3) Exclude All Evidence of Non-Party, Dennis Hasson's Boxing Career after Lembo Found the New Jersey Contract Void**

Plaintiffs seek to exclude the aforementioned information based on FRE 401 and 403. In this regard, Plaintiffs first argue that the evidence they seek to exclude is not relevant. According to FRE 401, "Evidence is relevant if: (a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Plaintiffs further argue that even if the Court determines that the aforementioned evidence is relevant under FRE 401, it should be excluded under FRE 403, which provides that

"[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The Court addresses these arguments for each category of evidence Plaintiffs seek to exclude in turn below.

### 1. Evidence of the New Jersey State Court Chancery Proceedings between Non-Party Hasson and Plaintiffs

The Court agrees with Plaintiffs that evidence of the New Jersey State Court Chancery proceedings between Hasson and Plaintiffs should be excluded from the trial of this matter. While Lembo argues that the Chancery Court proceedings are relevant to both whether Plaintiffs were provided with a full judicial mechanism with which to challenge the NJSACB's decision to invalidate the New Jersey contract and whether Plaintiffs attempted to mitigate their damages as required under the New Jersey Tort Claims Act and § 1983, the Court disagrees. Lembo is correct that had Hand and Nowicki been provided with a full judicial mechanism with which to challenge the NJSACB's decision to invalidate the New Jersey contract, evidence of that mechanism would be relevant to their due process claims. Lembo has, however, failed to provide adequate support for his position that the Chancery Court proceedings, in which the NJSACB was not a party, qualifies as such a mechanism. Lembo relies upon *DeBlasio v. Zoning Board of Adjustment for the Township of West Amwell*, 53 F.3d 592, 597 (3d Cir. 1995) (abrogated on other grounds), to support his claim that the existence of the Chancery Court case filed by Hasson against Hand and Nowicki is evidence that Hand and Nowicki had a full judicial mechanism available to challenge the NJSACB's decision invalidating the New Jersey contract. However, according to *DeBlasio*:

> In order to establish a violation of his right to procedural due
> process, DeBlasio, in addition to proving that a person acting under
> color of state law deprived him of a protected property interest,

7

>must establish that the state procedure for challenging the deprivation does not satisfy the requirements of procedural due process. As we observed in *Bello*, a state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by a local administrative body. **In other words, when a state affords a full judicial mechanism with which to challenge the administrative decision in question, the state provides adequate procedural due process, whether or not the plaintiff avails him or herself of the <u>provided appeal mechanism</u>.**

53, F.3d at 597 (internal quotation marks and citations omitted) (emphasis added). Reliance upon *DeBlasio*, which stands for the proposition that the existence of the right to appeal an administrative agency's decision is sufficient for due process purposes to establish a full judicial mechanism by which to challenge the adverse agency decision, is therefore misplaced.

The Chancery Court proceedings between Hasson and Hand and Nowicki did not involve an appeal of the NJSACB's decision to invalidate the New Jersey contract. Indeed, as already noted, the NJSACB was not even a party to the Chancery Court proceedings. Nothing in *DeBlasio* suggests that a legal proceeding outside of the appeal mechanism would suffice as a full judicial mechanism to challenge the administrative decision for due process purposes and certainly not a legal proceeding in which the agency at issue is not a party. Further, Lembo has cited no other law to support his contention that the Chancery Court proceedings between Hasson and Hand and Nowicki qualify as a full judicial mechanism with which to challenge the NJSACB's decision invalidating the New Jersey contract. Under these circumstances the Court finds that the Chancery Court proceedings are not relevant to this inquiry.

The Court similarly finds that the Chancery Court proceedings are not relevant to the question of whether Plaintiffs took reasonable steps to mitigate their damages. While Lembo is correct that under the New Jersey Tort Claims Act and § 1983, Plaintiffs are obligated to take reasonable steps to mitigate their damages, Lembo has cited no law to support his argument that

the existence of the Chancery Court proceedings are relevant to this inquiry.  Plaintiffs were not obligated to pursue any third party claims against the NJSACB in the Chancery Court proceedings and nothing in the entire controversy doctrine (*see* N.J. Ct. R. 4:30A) would bar Plaintiffs' current suit against the NJSACB based on the existence of the Chancery Court proceedings because successive actions against an entity not a party to the first action are generally not precluded under said doctrine.  *See Hobart Bros. v. National Union Fire Ins.*, 354 N.J. Super. 229, 242 (App. Div.), *cert. denied*, 175 N.J. 170 (2002).  Lembo has not suggested, let alone proven, otherwise.  While Defendants might be entitled to offset any damages obtained by Plaintiffs in this case based on any settlement amounts collected by Hand and Nowicki as a result of the disposition of the Chancery Court proceedings with Hasson, that does not transform the existence of the Chancery Court proceedings into a relevant topic for the jury in this matter.  Again, Lembo has not cited any law to support his contention that, in the context of this case, the Chancery Court proceedings are relevant to whether Plaintiffs adequately attempted to mitigate their damages.  Moreover, even if some minimal relevance could be inferred, the Court would nevertheless bar the introduction of this evidence under FRE 403 based on the substantial likelihood that it would confuse the issues and mislead the jury in this matter.

For the foregoing reasons, Plaintiffs' motion *in limine* to exclude any reference to the Chancery Court proceedings between Hasson and Hand and Nowicki is granted.

### 2. Plaintiffs' Failure to Appeal the NJSACB's Decision Invalidating the New Jersey Contract

The Court finds that Plaintiffs' ability to appeal the NJSACB's decision invalidating the New Jersey contract would be relevant to whether they were provided with a full judicial mechanism with which to challenge the NJSACB's decision, provided the appeal mechanism was triggered.  Here, Plaintiffs' appeal of the NJSACB's decision is governed by N.J. Ct. R. 2:4-

9

1(b). N.J. Ct. R. 2:4-1(b) states, "[a]ppeals from final decisions or actions of state administrative agencies or others . . . shall be taken within 45 days from the date of service of the decision or notice of the action taken." Whether Plaintiffs' failure to appeal the NJSACB's decision invalidating the New Jersey contract is relevant to this case, turns on whether Plaintiffs received adequate notice of the NJSACB's decision under N.J. Ct. R. 2:4-1(b).

According to *In re CAFRA Permit No. 87-0950-5 Issued to Gateway Associates*, 152 N.J. 287, 299 (1997):

> To satisfy Rule 2:4-1(b), an agency decision should contain adequate factual and legal conclusions. The decision also should give unmistakable notice of its finality. *DeNike v. Board of Trustees, Employees Retirement Sys. of N.J.*, 34 N.J. 430, 435, 170 A.2d 12 (1961); *see also Szcepanik v. Department of Treasury*, 232 N.J. Super. 491, 498-500, 557 A.2d 705 (1989) (holding that finality of decision not established with prior determinations that lacked findings of fact). Although not mandatory, the notice also should describe briefly the right to an appeal within the agency and the time limits for filing such an appeal. *DeNike, supra*, 34 N.J. at 435, 170 A.2d 12.

The New Jersey Appellate Division further clarified that in determining what constitutes a final agency decision, the Court must also consider and analyze the following attributes:

> (1) The decision or action must be authorized and issued by a state agency. R. 2:2-3(b)(2); (2) The decision or action must not be advisory or informal. *DeNkike, supra*, 34 *N.J.* at 434; (3) The decision or action must be adequately communicated to the person to be bound. *Id.* at 435; (4) the decision or action must unmistakably evidence that it is the agency's final decision or action concerning the matter. *Northwest Cov. Med. Ctr., supra*, 167 *N.J.* at 139; *In re CAFRA, supra*, 152 *N.J.* at 299; *DeNike, supra*, 34 *N.J.* at 435; (5) the decision or action must clearly set forth the agency determination and the basis for same. *In re CAFRA, supra*, 152 *N.J.* at 299; (6) The decision or action must be of such a nature that it is evident it marks the consummation of the agency's decision making process and not the beginning of the agency proceeding. *Bennett v. Spear, supra*, 520 *U.S.* at 177-78, 117 *S.Ct.* at 1168, 137 *L.Ed.2*d at 305; and (7) the decision or action should advise the party of any right to an administrative

> appeal or hearing, if such exists, together with the time within which such action must be taken. *In re CAFRA, supra*, 152 *N.J.* at 299.

*In re Objection of Sun Life Assur. Co. of Canada*, No. A-1816-06T3, 2008 WL 110280, at *5 (N.J. Super. Ct. App. Div. Jan. 3, 2008).

The section of the New Jersey Administrative Code governing boxer-manager contracts is N.J.A.C. 13:46-5.6. According to N.J.A.C. 13:46-5.6(a), "Boxer-manager contracts in New Jersey shall be effective for a maximum of five years, unless the manager releases the boxer or the Commissioner declares the contract void." The New Jersey Administrative Code is silent as to the procedure to be used by the Commissioner in declaring the contract to be void.

Here, Lembo points to two communications as evidence that Plaintiffs received notice of the NJSACB's decision to void the New Jersey contract, thereby triggering Plaintiffs' ability and need to appeal the agency's decision: (1) Lembo's August 24, 2011 email to Hasson declaring that the New Jersey Contract was void; and (2) Lembo's January 3, 2012 Certification used in Hasson's Chancery Court case against Hand and Nowicki. The Court addresses each in turn.

With respect to Lembo's August 24, 2011 email to Hasson, the Court finds this communication to be inadequate to satisfy N.J. Ct. R. 2:4-1(b). Lembo's email was sent to Hasson and copied to then Commissioner Aaron Davis and another New Jersey state employee, Theresa Garzio, and consisted of a single sentence, "The NJ management contract filed at our agency offices in 2009 is void because no party to that contract disclosed that there was a pre-existing management contract in effect in PA at the time." (Cert. of Counsel of 6/26/2014, Ex. E; Docket Entry No. 25-3 at 34). There was no salutation or closing on the email and the email was not even electronically signed by Lembo, though it was sent from his account. More importantly, the email was not copied to either Hand or Nowicki. While Lembo maintains that

11

he sent a hard copy of the email to Hand and Nowicki by regular mail, there is, as the District Court noted in its Opinion on the parties' motions for summary judgment, no proof of same other than Lembo's assertion that the mailing was made. (Tr. of Proceedings held on 2/27/2015, at 4:5-9).

The Court does not find it problematic, as advocated by Plaintiffs, that the email was sent by Lembo and not Commissioner Davis, even though N.J.A.C. 13:46-5.6(a) refers to "the Commissioner declar[ing] the contract void." The Court, however, is concerned that Lembo's email was both informal and inadequately communicated to Hand and Nowicki, the persons to be bound. Indeed, the Court finds that Lembo's August 24, 2011 email could be considered nothing but informal and, as just noted, there is little, if no, credible evidence that the email was sent to either Hand or Nowicki. The Court also questions whether the email clearly set forth the basis for the NJSACB's determination. Obviously, Lembo stated that the New Jersey contract was void, but the only reason he gave to support that conclusion was that "no party to that contract disclosed the pre-existing management contract in effect in PA at the time." (Cert. of Counsel of 6/26/2014, Ex. E; Docket Entry No. 25-3 at 34). Apparently, the existence of the allegedly non-disclosed Pennsylvania contract was problematic because, under N.J.A.C. 13:46-5.6, boxer-manager contracts cannot exceed five years and Lembo "combined the Pennsylvania contract and the New Jersey contract together, and determined that between the two they exceeded the five-year limit in the New Jersey regulation." (Tr. of Proceedings held on 2/27/2015 at 3:24 – 4:2). However, as the District Court noted in its decision on the parties' motion for summary judgment, Lembo's decision to combine the two contracts is "not established in the record[.]" (*Id*. at 3:23). It is certainly not clearly set forth in Lembo's August 24, 2011 email. Nevertheless, the Court need not rely on this factor in evaluating the sufficiency

of Lembo's August 24, 2011 email.  The Court finds that the informality of the August 24, 2011 email alone fails to establish adequate notice of the NJSACB's decision under N.J. Ct. R. 2:4-1(b).  Additionally, the lack of proof that the email was sent to Hand or Nowicki also prevents the email from being considered adequate notice under N.J. Ct. R. 2:4-1(b).

The Court thus turns to Lembo's Certification of June 3, 2012.  Like the August 24, 2011 email, the Court also finds Lembo's Certification to be inadequate.  In his Certification, Lembo states that "[a]s a result" of being informed by Hasson "that the NJ Boxer Manager Contract was entered into at the same time he had another boxer manager agreement in existence in the Commonwealth of Pennsylvania[,]" the NJSACB, "pursuant to N.J.A.C. 13:46-5.6 . . . declared the NJ Boxer Manager Contract void."  (Cert. of Counsel of 6/26/2014, Ex. G; Docket Entry No. 25-3 at 39, ¶ 6).  He also cites to the August 24, 2011 email stating that in it he "confirm[ed] that the NJACB [sic] deems the NJ Boxer Manager Contract void 'because no party to that contract disclosed that there was a pre-existing management contract in effect in PA at the time.'"  (*Id*. (quoting Lembo email of 8/24/2011)).  Again, however, nowhere in the Certification does Lembo explain that the NJSACB's decision to void the New Jersey contract was based on Lembo's decision to combine the terms of the New Jersey contract with the Pennsylvania contract and thereby determine that between the two they exceeded New Jersey's five-year limit.  The failure to do so begs the question of whether Lembo's Certification clearly set forth the basis for the NJSACB's determination to void the New Jersey Contract.  *See In re Objection of Sun Life Assur. Co. of Canada*, 2008 WL 110280, at *5.  If it failed to do so, then the Certification would not satisfy the notice requirements of N.J. Ct. R. 2:4-1(b).

The Court need not, however, definitively decide that issue because it finds that even if the Court presumes that the basis of the NJSACB's decision was clearly set forth in Lembo's

13

Certification, the agency's decision still was not adequately communicated to the persons to be bound by same, namely Hand and Nowicki.  In reaching this conclusion, the Court notes that Lembo did not address his Certification to Hand or Nowicki; nor is there any proof that he or anyone at the NJSACB sent it directly to them.  Instead, it appears on the face of the Certification that the Certification was sent to counsel for Hasson for use in Hasson's lawsuit against Hand and Nowicki and that counsel for Hasson in fact filed Lembo's Certification in the Chancery Court proceedings to strengthen Hasson's claims.  The NJSACB has cited no law to support the notion that it is appropriate for an administrative agency to funnel notice of its decision to the individuals to be bound through a third party.  While there is a dearth of case law interpreting the New Jersey Administrative Code provision at issue, *i.e.,* N.J.A.C. 13:46-5.6, the case law analyzing N.J. Ct. R. 2:4-1(b) discussed above implies that such circuitous notice is insufficient.  For an agency decision to be adequately communicated, it would appear that the decision should be communicated directly by the administrative agency to the persons to be bound.  The Court finds that anything less is inappropriate.

The Court further finds that inexplicably there is no credible evidence that the NJSACB ever directly informed Hand or Nowicki of its decision invalidating the New Jersey contract.  Instead, the NJSACB only directly informed Hasson of its decision to invalidate the New Jersey contract:  first via Lembo's informal August 24, 2011 email and second through the Certification Lembo provided to counsel for Hasson dated January 3, 2012 for use in Hasson's Chancery Court proceedings against Hand and Nowicki.  The Court finds that this type of circuitous notice is insufficient under N.J. Ct. R. 2:4-1(b).  As a result, the Court finds that the forty-five day period prescribed by N.J.Ct. R. 2:4-1(b) was never triggered.  Consequently, there was no failure

by Hand or Nowicki to appeal the NJSACB's decision invalidating the New Jersey contract. Plaintiff's request to bar any reference to such a failure is therefore granted.[1]

### 3. Evidence of Non-Party Hasson's Boxing Career after Lembo Found the New Jersey Contract Void

The Court finds that evidence of Hasson's boxing career after Lembo invalidated the New Jersey contract is relevant under FRE 401 and does not pose any concerns under FRE 403. In this regard, while Plaintiffs argue that evidence of Hasson's boxing career after the NJ contract was voided is irrelevant because it has no bearing on whether Defendants provided Plaintiffs with notice and an opportunity to be heard, this argument fails to address the information's relevance to damages. Here, Plaintiffs are seeking damages in the form of their lost managerial fees. As noted above, it appears that Plaintiffs have defined lost managerial fees as the percentage of Hasson's winnings they would have been entitled to under the terms of the New Jersey contract. Under FRE 401, to be relevant, evidence must have a "tendency to make a fact more or less probable than it would be without the evidence[.]" Clearly, what Hasson's actual winnings were post Lembo invalidating the New Jersey contract makes a particular damages number, *i.e.*, lost managerial fee calculation, more probable, and clearly the damages to be awarded, if any, is a fact of consequence in this action. Plaintiffs do not argue otherwise. Instead, they focus their entire request to exclude evidence of Hasson's boxing career post Lembo's invalidation of the New Jersey contract on the lack of relevance to whether they were provided with notice and an opportunity to be heard, while completely ignoring the relevance

---

[1] Unlike Lembo, the Court does not find that such a result means that Hand and Nowicki's due process rights could not have been violated as there has been no detrimental agency action. To the contrary, the Court finds that the NJSACB's purported failure to provide Hand and Nowicki with the requisite unmistakable notice of the finality of its decision is sufficient to trigger their due process rights.

this evidence has on damages. While Plaintiffs can certainly argue that they would have obtained better results for Hasson had they continued to manage him, that is an area for cross examination, not a reason to exclude the evidence. As a result, Plaintiffs' request to preclude all evidence of Hasson's boxing career after Lembo invalidated the New Jersey contract is denied.

### III. Conclusion

For the reasons stated above, Lembo's motion *in limine* is DENIED. Plaintiffs' motion *in limine* is GRANTED in part and DENIED in part. An appropriate Order follows.

Dated: October 6, 2016

                                                       s/Tonianne J. Bongiovanni
                                                      **TONIANNE J. BONGIOVANNI**
                                                      **UNITED STATES MAGISTRATE JUDGE**